UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE METRY,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

Case No. 23-12691
Honorable Laurie J. Michelson

---

**ORDER GRANTING STATE FARM'S MOTION FOR SUMMARY JUDGMENT [13]**

---

Catherine Metry and James Saros, an unmarried couple, were living together in Saros' home when Saros suffered a stroke. While Metry expected that she would be permitted to stay in the home and care for her ailing partner, Saros' power of attorney and family had other plans—they evicted Metry from the home. During the eviction, Metry claims she was not permitted to walk through the home and collect her personal items. So Metry brought this lawsuit. But she did not name Saros' power of attorney or adult children who allegedly refused to allow her to collect her belongings and allowed many to be disposed of. (*See* ECF No. 13-3, PageID.215.)

Instead, Metry sued State Farm—the company that provided Saros with homeowners' insurance. Unfortunately, Metry is not mentioned in the Policy between Saros and State Farm and the Court has been given no Michigan law that suggests she would fall within the definition of an "insured" under the Policy. So State Farm filed a motion for summary judgment arguing that it cannot be liable to Metry for

breach of contract. (ECF No. 13.) Because the Court agrees that Metry cannot sue State Farm based on a Policy to which she is not a party, the Court GRANTS State Farm's motion.

## I.

In 2017, Catherine Metry moved in with her boyfriend James Saros at his home in Grosse Pointe Park, Michigan. (ECF No. 8, PageID.45.) Relevant here, the pair lived together and dated for over three years, but they never got married. (ECF No. 13-4, PageID.188–189.) In May of 2020, Saros tragically suffered a stroke. (*Id.* at PageID.189.) In the months following Saros' stroke, Saros' power of attorney, John Korachis, filed an eviction proceeding in Gross Pointe Park Municipal Court to remove Metry from Saros' home. (*See* ECF No. 21-5, PageID.563–564.) On October 16, 2020, the court ordered that Metry be evicted and that "plaintiff pay for movers" and "pay for storage" of Metry's items until December 31, 2020. (ECF No. 21-3, PageID.546.)

On November 20, 2020, movers arrived at the Gross Pointe home to remove Metry and her belongings. (ECF No. 8, PageID.45.) But the eviction did not go smoothly. Metry claims that she was "not allowed to walk through the home" to collect her items, and that the Saros family had hired "a bogus court officer" to remove her from the home and prevent her from communicating with the movers. (ECF No. 21, PageID.522.) This, according to Metry, resulted in her losing "many things that belong to her" because they were either not returned to her, not sent to the storage facility, or damaged by the moving company. (*Id.* at PageID.522–523.) The total value

of these lost items is approximately $175,000. (ECF No. 8, PageID.45; ECF No. 21-4, PageID.547–548.)

At the time of Metry's eviction, Saros was insured under a Policy issued by State Farm. (*See* ECF No. 13-3.) So, in July 2023, Metry filed a claim with State Farm to recover for her "stolen" items. (ECF No. 8, PageID.45–46.) State Farm denied her claim. (*Id.*) Unsatisfied, Metry filed the instant lawsuit on September 27, 2023, in Wayne County Circuit Court, and State Farm timely removed it to this Court. (ECF No. 1, PageID.8.) In her amended complaint, Metry asks the Court to "adjudicate the fact that [she] did not only get insured under the policy but is also able to make a claim against State Farm" for her $175,000 worth of lost goods. (ECF No. 8, PageID.45.)

Now before the Court is State Farm's motion for summary judgment. (ECF No. 13.) State Farm argues that Metry is not insured by Saros' policy, and thus "there is no coverage for her allegedly stolen and/or damaged items." (*Id.* at PageID.87.) Further, State Farm argues, even if Metry were insured under her boyfriend's policy, she failed to timely file this lawsuit. (*Id.* at PageID.92.) Metry responds that she is "an insured" under the Policy because she was in a "civil union, domestic partnership, or other substantially similar legal relationship" with Saros. (ECF No. 21, PageID.528–530.) And that, perhaps in the alternative, she is a third-party beneficiary of the Policy. (*Id.* at 530–531 ("However, we cannot stop at this point because the question becomes how does Metry tie into the policy or contract in this case. Metry ties into this policy as a 'third-party beneficiary.'").) Metry also argues

3

that this action is timely because her rights to enforce the contract did not "vest[] . . . until she became into being or ascertainable" to State Farm. (*Id.* at PageID.534.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

One way State Farm may discharge its initial summary judgment burden is by showing there is an absence of evidence on an essential element of Metry's case. After all, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," such that "there can be no genuine issue as to any material fact" for a jury to decide. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation omitted). If State Farm demonstrates that Metry lacks sufficient evidence to support her case, the burden shifts to Metry to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "To avoid summary judgment, the nonmovant must establish, at a minimum,

4

an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

Both parties agree that Michigan law governs the Court's interpretation of the Policy. *See, e.g.*, *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). In Michigan, an insurance contract is generally interpreted like any other contract. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). The Court "looks to the contract as a whole," *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997), to "effectuate the intent of the parties," *Health v. State Farm Mut. Auto. Ins. Co.*, 659 N.W.2d 698, 699 (Mich. Ct. App. 2002) (per curiam), and it enforces unambiguous terms as written, *see Rory*, 703 N.W.2d at 30.

## III.

Start with the plain language of the Policy. First, the Policy provides that "insured" means:

a. you;
b. your relatives;
c. and any other person under the age of 21 in the care of a person described above.

(ECF No. 13-3, PageID.121.)

The Policy further defines a "relative" as:

any person related to you by:

a. blood;
b. adoption;
c. marriage; or
d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at

the time when, the legal relationship was established; and who resides primarily with you.

(*Id.* at PageID.123.)

And the Policy clarifies that "you" and "your" mean "the person or persons shown as 'Named Insured' in the Declarations." (*Id.* at PageID.124.) And "[if] a 'Named Insured' shown in the Declarations is a human being, then 'you' and 'your' include":

   a. spouse of a "Named Insured"
   b. a party to a civil union with a "Named Insured";
   c. a domestic partner of a "Named Insured"; or
   d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established.

(*Id.*)

Further, the Policy contains a provision that requires any insured person to commence any action against State Farm within one (1) year after a loss occurs. More specifically, it provides that:

No action will be brought against us unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. The time for commencing an action is tolled from the time you notify us of the loss until we formally deny liability.

(*Id.* at PageID.141.)

Here, James Saros was the only "Named Insured" listed on the Policy. (*Id.* at PageID.107.) And Metry does not allege she is related to Saros by blood, adoption, or marriage. (*See generally* ECF No. 8.) Instead, Metry argues that she was insured under the Policy because she was in a civil union or domestic partnership with Saros.

6

(ECF No. 21, PageID.529–530.) State Farm responds that the pair were "merely boyfriend and girlfriend and had no legal relationship" and that Metry presents "no evidence of any legal relationship recognized under any [Michigan] laws." (ECF No. 13, PageID.88.)

State Farm is right. The language of the Policy expressly cabins the inclusion of civil unions and domestic partnerships to those legal relationships that are "recognized and valid in the state where, and at the time when, the legal relationship was established." (ECF No. 13-3, PageID.123.) And, as far as this Court can discern, there is no statewide recognition of civil unions or domestic partnerships in Michigan. True, some individual municipalities in Michigan have chosen to define and recognize domestic partnerships in their municipal codes, even going as far as to outline a formal process by which couples can "declare" their relationship. *See, e.g.*, East Lansing, Mich., Code of Ordinances § 22-53; Ann Arbor, Mich., Code of Ordinances § 9-87. But no such law recognizing civil unions or domestic partnerships exists in Michigan's Compiled Laws.[1]

Metry points the Court to *National Pride at Work, Inc. v. Governor of Michigan*, 748 N.W.2d 524 (Mich. 2008), for the assertion that "a civil union or domestic

---

[1] Whenever possible, courts interpret contracts to give effect to all of the contract's terms. *See Cyber Sols. Int'l, LLC v. Pro Mktg. Sales*, 634 F. App'x 557, 563 (6th Cir. 2016). Thus, it is worth noting that while this provision of the contract may have no effect in Michigan, it still has effect in other states that do recognize civil unions and domestic partnerships. *See, e.g.*, Haw. Rev. Stat. § 572B-4(b) (2012); 75 Ill. Comp. Stat. 75/10 (2011); Vt. Stat. Ann. tit. 15, § 1201 (1999).

7

partnership does exist under Michigan Law." (ECF No. 21 at PageID.29.) Metry misreads that case.

At issue in *National Pride* was Michigan's 2004 marriage amendment, which states that "the union of one man and one woman in marriage shall be the only agreement recognized as a marriage or similar union for any purpose." Mich. Const. art. I, § 25. At the time of the amendment, some public employers offered health-insurance benefits to their employees' same-sex domestic partners. *Nat'l Pride*, 748 N.W.2d at 531–33. Those employers had policies that outlined the criteria that they used to define a domestic partnership. *Id.* Accordingly, the question for the Michigan Supreme Court was whether the marriage amendment "prohibit[ed] public employers from providing health-insurance benefits to their employees' qualified same-sex domestic partners." *Id.* at 529. Plaintiffs argued that "the *only* thing prohibited by [the marriage] amendment is the recognition of a same-sex relationship as a marriage" and that public employers were not recognizing same-sex partnerships as marriages. *Id.* at 533. But the court disagreed. It reasoned that because the marriage amendment banned the recognition of same-sex marriage "or similar union for any purpose," and these public employers' criteria did recognize a union similar to marriage, the employers were prohibited from providing health-insurance benefits to the partners of same-sex employees. *Id.* at 535–36.

At no point in its opinion did the Michigan Supreme Court say that Michigan law recognizes civil unions or domestic partnerships, let alone detail what would qualify as one under state law. Rather, the court delt entirely with the definitions of

8

domestic partnership that the public employers outlined in their policies. Accordingly, Metry's reliance on *National Pride* is inapposite, and she cannot demonstrate that she was in a civil union or domestic partnership with Saros that was legally recognized in Michigan. Thus, because Metry is not (1) the Named Insured, (2) the spouse of the Named Insured, or (3) a person in a civil union, domestic partnership, or other similar legal relationship with the Named Insured as recognized in their home state, Metry is not covered under the Policy.[2]

But even if Metry were insured under the Policy, her lawsuit would be untimely. Indeed, the Policy requires that "any action by any party must be started within one year after the date of loss or damage." (ECF No. 13-3, PageID.141.) Here, the date of loss occurred on November 20, 2020—that is, the day movers came to Saros' home and removed some of her items. (*See* ECF No. 21, PageID.527.) One year from that date is November 20, 2021. But Metry did not notify State Farm of the loss until July 2023. (*Id.* at PageID.534.) And she did not file suit until September 27, 2023, almost three years after the loss. (ECF No. 1, PageID.1.) So Metry's lawsuit is time-barred.[3]

---

[2] State Farm argues that even if Metry were insured under the Policy, her claim would be barred by the Policy's theft exclusion provision, which "specifically excludes theft committed by an insured." (ECF No. 13, PageID.89.) And here, because Metry claims that Saros' children and power of attorney committed the theft, her claim would be excluded. (*Id.*) Metry disagrees. (*See* ECF No. 21, PageID.523–525.) But because the Court has determined that Metry was not insured under the Policy, it need not reach this argument.

[3] Michigan law mandates that every fire insurance contract must contain a provision indicating that "[a]n action must be commenced within 1 year after the loss or within the time period specified in the policy, whichever is longer." Mich. Comp. Laws § 500.2833(1)(q). Michigan courts strictly enforce these time limits. *See, e.g.*,

9

Metry's counterargument on this point is hard to decipher. While Metry first argues that she "is an insured under the Policy" (ECF No. 21, PageID.526), she then contends that her suit is timely because she is really "a third-party beneficiary" (*id.* at 532) whose one-year time limit did not start running until a later date. Metry argues that "the issue of the one year comes into play at the time that [she] vested her interest in the contract," which according to her is when "she became into being or ascertainable" to State Farm. (*Id.* at PageID.533.) This relevant date, Metry says, is when her counsel first sent "a letter to State Farm making a claim [on her] behalf for items she believes were taken from her property"—i.e., July 14, 2023. (*Id.* at PageID.534.)

There are a few problems with this argument. First, Metry is not a third-party beneficiary to the Policy. Under Michigan Compiled Laws § 600.1405(1), a person is a third-party beneficiary to a contract only when the contract establishes that a promisor "has undertaken to give or to do or refrain from doing something directly to or for said person." Put differently, third-party beneficiary status can only be asserted where there is "an express promise to act for the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of contract." *Dynamic Constr. Co. v. Barton Malow Co.*, 543 N.W.2d 425, 428 (Mich. Ct. App. 1995) (citing *Fishbach-Natkin, Inc. v. Shimizu America Corp.*, 854 F. Supp.

---

*Randolph v. State Farm Fire & Cas. Co.*, 580 N.W.2d 903, 905 (Mich. Ct. App. 1998) (finding that summary disposition in favor of the insurer was appropriate when suit was filed 12 months and 21 days after the loss occurred).

10

1294, 1303 (E.D. Mich. 1994)). So when an insurance agreement fails to specifically denominate an individual as an intended third-party beneficiary, that individual does not have a right to sue for contract benefits. *See Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003). And here, as State Farm explains, "the insurance policy between State Farm and Mr. Saros does not make any reference to Metry. And . . . Metry does not belong to a defined class under the Policy." (ECF No. 23, PageID.646.)

Further, even assuming Metry were a third-party beneficiary of the Policy, her proposed tolling rule would create unreasonable results. (*See id.* at PageID.649.) Indeed, Metry argues that her "claim [did] not accrue[]" until she discovered, in her opinion, "that she was insured under the policy." (ECF No. 21, PageID.536.) But neither the Policy nor Michigan Compiled Laws § 500.2833(1)(q) allows for such a "discovery" rule. *See, e.g.*, *Varner v. State Farm Fire & Cas. Co.*, No. 17-10082, 2017 U.S. Dist. LEXIS 209940, at * 7 (E.D. Mich. Dec. 21, 2017) ("Neither the Policy nor M.C.L. § 500.2833(1)(q) provide that the action may be commenced within one year of the insured's discovery of the loss or damage."). And the adoption of one here would mean that "if a known loss occurs, but an insured . . . does not receive a copy of the contract for a decade . . . the claim can proceed anyway after all that time, simply because said insured did not know if they were covered." (*Id.*)

Accordingly, the Court finds that even if Metry were an insured or a third-party beneficiary under the Policy, Metry's lawsuit is untimely.

## IV.

For the reasons above, the Court GRANTS State Farm's motion for summary judgment (ECF No. 13). A separate judgment will issue.

SO ORDERED.

Dated: February 19, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
